IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kimberly Lynn Rider,

      Plaintiff,

      vs.               Case No 2:17-cv-41

Commissioner of Social Security,

      Defendant.


OPINION AND ORDER

Plaintiff, Kimberly Lynn Rider, brings this action under 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Plaintiff applied for disability insurance benefits in May, 2013, asserting disability from back pain, depression, fibromyalgia, anxiety, arthritis, poor memory, asthma, degenerative disc disease, and leg, knee, and ankle pain. (R. at 237-238). A hearing was held on December 9, 2015, at which plaintiff, represented by counsel, appeared and testified. (R. at 137-161). A vocational expert also testified at the hearing, stating that based on plaintiff's age, education, and work experience and the residual functional capacity ("RFC") determined by the administrative law judge ("ALJ"), plaintiff could perform jobs available in the national economy. (R. at 154-159). On January 19, 2016, the ALJ issued a decision finding that plaintiff was not disabled at any time through December 31, 2015, the date last insured. (R. at 117-132). On September 22, 2016, the Appeals Council denied plaintiff's request for review

and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-3).

This matter is before the court on plaintiff's statement of errors (Doc. 10), the Commissioner's memorandum in opposition (Doc. 15), plaintiff's reply (Doc. 16), and the administrative record (Doc. 9). For the reasons that follow, plaintiff's statements of error are overruled, and the Commissioner's decision is affirmed.


I. Administrative Record

A. Plaintiff's Hearing Testimony

At the December, 2015, administrative hearing, plaintiff testified that she stopped working in 2010 because of pain. (R. at 141-142). Plaintiff stated that she cannot lift, reach above her head, or put her dishes away in a cupboard with her right arm because of pain in her shoulder, and that her daughter and daughter-in-law clean her house. (R. at 142-43). Plaintiff testified that she suffers from pain in her back, leg, and shoulder, and that she cannot stand, sit, or walk for long periods of time. (R. at 144-145). Plaintiff further testified that after her recent back surgery, her pain "is like 20 times worse now." (R. at 146). Plaintiff opined that she is able to sit, stand, or walk for up to fifteen minutes at a time. (R. at 146). Plaintiff further testified that she is no longer able to read or play games because her pain affects her concentration and memory, and that she no longer attends church, drives, or walks

around the grocery store. (R. at 147-48). She received injections in her knees that helped "a little" and gave her pain relief for approximately one month. (R. at 150).

B. Medical Records

1. Shelly Dunmyer, M.D.

On September 13, 2012, plaintiff visited Dr. Dunmyer's practice and was seen by Janell Potts, CRNP. Plaintiff reported that "she just hurt everywhere." (R. at 427). Nurse Potts determined that a previous spinal MRI did not show disc protrusion or nerve entrapment, and concluded that plaintiff's back problem was improving in some respects. (R. at 427). On September 17, 2012, and October 29, 2013, plaintiff again reported back pain to Nurse Potts. (R. at 398, 423).

On three occasions in 2013, Dr. Dunmyer examined plaintiff and found tenderness over the musculature in the lumbosacral spine, with limited range of motion in flexion and extension secondary to pain, but with a lower extremity strength of 5/5 and a straight leg raise which was negative bilaterally in a seated position. (R. at 402, 405, 416). On March 6, 2014, plaintiff complained of continuing pain and bruising of the coccyx after a fall in February, 2014. (R. at 543-544). Dr. Dunmyer found that plaintiff's lumbar disk condition was stable and recommended the use of a hemorrhoid ring. (R. at 544).

2. Genesis Healthcare System

Shane Backus, M.D., looked at the results of plaintiff's September 13, 2013, MRI of the lumbar spine, and reported:

vertebrae heights within normal limits, expected marrow signal, and hemangioma at S1, alignment with normal limits, and preserved disk space; four small disk bulges in other vertebrae, with minimal central canal stenosis but no neural foramina and minimal or no central canal stenosis; and a small annular tear at L5-S1. (R. at 462).

On October 8, 2013, plaintiff was seen for a physical therapy evaluation for back pain. (R. at 375.) The physical therapist reported decreased range of motion, decreased flexibility, decreased muscular strength, pain between 2-9 on a 10-point scale, and palpable tenderness between the L3 and L5 vertebrae. (R. at 375). On October 15, 2013, plaintiff reported her pain at 4-5 out of 10, and on December 2, 2013, and December 5, 2013, plaintiff reported that her lumbar back pain was 7.5 out of 10. (R. at 380).

On October 10, 2013, plaintiff underwent a knee x-ray that showed preserved medial and lateral joint compartments bilaterally in both knees, a small enthesopathic spur superior pole of right patella, and a tiny rounded density in the anterior joint space of the right knee on lateral view. (R. at 464). Andrew Guglielmi, D.O., reported the results of an October 19, 2013, MRI of plaintiff's right knee, which showed minimal degenerative change of the patellofemoral compartment, and no acute osseous abnormality, internal ligamentous derangement, discrete meniscal tear, or loose intra-articular body. (R. at 466).

James Neuenschwander, M.D., reported on the results of a February 15, 2014, non-contrast CT scan of plaintiff's lumbar spine following plaintiff's fall that month. He found: normal height and alignment of the lumbar vertebrae; no evidence of acute fracture or focal subluxation; intact posterior elements; mild disk space narrowing at L5-S1; unremarkable paraspinal soft tissues, and no acute osseous abnormality. (R. at 519, 521).

3. Genesis Pain Management Clinic

On December 4, 2013, plaintiff saw Yahya Bakdalieh, M.D., for management of her lower back pain. (R. at 387-88). Plaintiff reported that lifting and standing or sitting for long periods of time exacerbate her lower back pain, and that heat and ice treatment give her some relief but physical therapy does not. (R. at 387). Dr. Bakdalieh reported a good active range of motion, and lower extremity muscle strength at 5/5. (R. at 387). He diagnosed lumbar spondylosis without myelopathy, chronic low back pain, and lumbar degenerative disc disease. (R. at 388, 505-506). On December 10, 2013, plaintiff underwent a bilateral medial branch block of her lumbar spine without complications. (R. at 511).

4. Orthopaedic Associates of Zanesville

On November 29, 2013, plaintiff saw Robert J. Thompson, M.D., complaining of right knee pain, upper thigh pain, and right ankle pain. (R. at 384). Plaintiff described the pain as "aching and dull throbbing pain," which she notices "with activity, sleeping and walking" but which does not disturb her

gait. (R. at 384). Dr. Thompson found crepitus and trace effusion of the right knee and moderate tenderness over the right medial joint line, but no tenderness over the right lateral joint line and a full range of motion with no discomfort. (R. at 384).

Christopher C. Bernett, PA-C, interpreted plaintiff's x-rays and found moderate arthritis of the medial compartment of the right knee. (R. at 386). Plaintiff's MRI of the same knee was normal and she received an injection of Kenalog and Lidocaine. (R. at 385). On December 18, 2014, plaintiff requested a cortisone injection in her right knee, stating that a cortisone treatment from November, 2014, gave her "good relief." (R. at 572). Plaintiff returned on July 1, 2015, with pain in both knees and in her right shoulder. (R. at 574). Mr. Bernett's examination revealed: no atrophy, crepitation, deformity, ecchymosis or scapula winging of the shoulders bilaterally; no obvious instability of the right shoulder; normal muscle tone; limited passive abduction and passive forward flexion; limited passive external rotation at ninety degrees with pain, and pain when reaching behind her back. (R. at 575). Plaintiff received a Kenalog injection in her shoulder. (r. at 575). X-rays of plaintiff's shoulder were normal. (R. at 577.)

On October 5, 2015, a non-contrast MRI of plaintiff's right shoulder revealed no acute osseous abnormality, a mild degenerative change of the acromioclavicular joint with inferior spurring, mild patchy areas of tendinopathy without evidence of a retracted full-thickness rotator cuff tear, and near

circumferential fluid signal suggesting tenosynovitis.  (R. at 578).  On October 7, 2015, plaintiff reported "minimal relief" from Kenalog injections in her shoulder, and her doctors prescribed physical therapy.  (R. at 581).

### 5.  2015 Back Surgery

On October 22, 2015, plaintiff underwent a contrast MRI of her lumbar spine.  Jane M. Burk, M.D., found a right paracentral disc protrusion, superior migration, and a deforming right ventral dural sac at L1-2.  (R. at 699).  On November 10, 2015, Michael Shannon, M.D., diagnosed a herniated lumbar disc with stenosis at L1-L2 and bilateral lumbar radiculopathy and recommended surgery.  (R. at 701-02).  On November 17, 2015, plaintiff underwent a decompressive laminectomy and microdisc, interlaminar fixation with a Coflex at L1-2.  (R. at 708-710).  Dr. Shannon's note of November 23, 2015, reflects that plaintiff was out of bed walking around with no leg pain and that the pain in her back was "improving."  (R. at 708).

### 6.  State Agency Review

On January 8, 2014, Maureen Gallagher, D.O., M.P.H., a state agency medical consultant, reviewed plaintiff's records and found that plaintiff had severe impairments consisting of osteoarthrosis, discogenic and degenerative back disorders, and fibromyalgia.  (R. at 243).  Dr. Gallagher also found that plaintiff had mild restrictions in her activities of daily living, and that she had the ability to occasionally lift and/or carry ten pounds; frequently lift and/or carry less than ten

pounds; stand and/or walk six hours in an eight-hour workday; and sit more than six hours in an eight-hour workday. (R. at 245). Dr. Gallagher concluded that plaintiff's alleged functional limitations were not supported by the evidence, and that plaintiff was partially credible. (R. at 244). Dr. Gallagher concluded that plaintiff retained the physical ability to perform some types of work, and that she was not disabled. (R. at 248). On April 1, 2014, Teresita Cruz, M.D., a state agency consultant, reviewed plaintiff's records and affirmed Dr. Gallagher's findings. (R. at 257-259).

C. ALJ's Decision

On January 19, 2016, the ALJ issued his decision. (R. at 117-132.) The ALJ found that plaintiff has the following severe impairments: lumbar spine degenerate disc disease, stenosis, radiculopathy, and degenerative joint disease; obesity; allergic rhinitis; asthma; right knee arthritis; right shoulder bursitis; fibromyalgia; anxiety; and depression. (R. at 123). The ALJ set forth plaintiff's RFC as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) except for the following additional limitations. The claimant is able to lift and carry 10 pounds occasionally and five pounds frequently; stand and/or walk for six hours of an eight-hour workday; sit for six hours of an eight-hour workday; foot control operation is limited to the occasional level; and push and pull is limited as per the exertional weight limits. The claimant is able to climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; occasionally stoop;

8

> never kneel at the right; never crawl; never
> overhead reach with the right upper
> extremity; unlimited in overhead reaching
> with the left upper extremity; and unlimited
> in regular reaching forward and to the sides.
> She is limited to occasional exposure to
> temperatures under 40 degrees Fahrenheit.
> She can perform goal-based production/work
> measured by end result, not pace work;
> limited to simple routine repetitive tasks;
> allowed off task five percent of the workday;
> and can have occasional and superficial
> interaction with the public, coworkers, and
> supervisors.

(R. at 126).

The ALJ determined that plaintiff was unable to perform her past work, but that there were jobs in the local and national economy that she could perform, and that she was not disabled under the Social Security Act at any time from October 14, 2010, through December 31, 2015, the last insured date. (R. at 131-132).

## II. Standard of Review

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined

as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## III. Analysis of Plaintiff's Statements of Error

## A. RFC Determination

## 1. Formulation of an RFC

Plaintiff's first and second statements of error challenge the ALJ's RFC findings. A claimant's RFC is the most that a claimant can do despite his or her limitations. 20 U.S.C. §404.1545(a)(1). Plaintiff bears the burden of providing the necessary medical evidence to demonstrate her impairments cause functional limitations resulting in disability. 20 C.F.R. §404.1512(c). The ALJ determines a claimant's RFC. 20 C.F.R. §§404.1527(e)(2) and 404.1546(c). The ALJ must evaluate all the medical evidence as well as the claimant's testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). "Discretion is vested in the ALJ to weigh all the evidence." *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 668 (6th Cir. 2009). Where the ALJ has properly considered plaintiff's evidence and substantial evidence supports his conclusion, "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184 at *7 (Soc. Sec. Admin. July 2, 2006). However, an ALJ

need not discuss every piece of evidence in the record for his decision to stand. *Thacker v. Comm'r of Soc. Sec.*, 99 F.App'x 661, 665 (6th Cir. 2004).

## 2. Work at Light Exertional Level

In her first statement of error, plaintiff argues that it was error for the ALJ to determine that her impairments allow her to walk and stand enough in an eight-hour day to perform work at the light exertional level. (Doc. 10, pp. 6-10). Plaintiff contends that her combination of physical impairments, including back pain, decreased range of motion, radiculopathy, and arthritis, require the conclusion that she is limited to a sedentary level of work. (Doc. 10, pp. 7-8). The Commissioner responds that plaintiff failed to present evidence of physical limitations greater than those incorporated into the ALJ's RFC, and that the ALJ gave appropriate consideration to the evidence of record, including post-operative treatment notes following plaintiff's November, 2015, spinal surgery. (Doc. 15, pp. 6-7).

The applicable regulation provides:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §404.1567.

In formulating plaintiff's RFC, the ALJ thoroughly considered plaintiff's long history of back problems. (R. at 127-128). The ALJ noted treatment records which showed some decreased range of motion of the lumbar spine and tenderness, including the October, 2015, MRI scan showing some central disc protrusion at L1-L2, which led to plaintiff's spinal surgery in November, 2015. (R. at 127-28). On the other hand, he also relied on: Dr. Dunmyer's September, 2012, notes showing improvement in a previously seen disc protrusion and no nerve entrapment; a 2013 MRI showing mild multilevel degenerative changes and a small annular tear, but no radiculopathy; a February, 2014, CT scan of the lumbar spine which showed normal height and alignment of the lumbar vertebrae, no evidence of acute fracture or focal subluxation, intact posterior elements, mild disk space narrowing at L5-S1, and mild disc bulges. (R. at 127-128). The ALJ stated that although plaintiff testified that the November, 2015, back surgery made her impairment worse, this claim was uncorroborated by medical evidence; in fact, Dr. Shannon reported post-surgery that plaintiff was released two days later and was ambulating and stable, with improving pain and no leg pain. (R. at 127-29). The ALJ also noted that plaintiff "has been able to heel and toe walk, had normal reflexes, sensation, and strength, and mostly negative straight leg raising tests." (R. at 127).

In regard to plaintiff's knee problems, the ALJ concluded that the objective medical evidence did not completely support plaintiff's subjective allegations. The ALJ noted that a knee x-ray taken in October, 2013, revealed only a possible small suprapatellar bursal effusion bilaterally, and that an October, 2013, MRI showed no acute osseous abnormality, no internal ligamentous derangement or discrete meniscal tear, no evidence of a loose intra-articular body, and only minimal degenerative changes of the patellofemoral compartment. (R. 128, 464, 466).

The ALJ noted that upon examination on October 17, 2013, plaintiff had decreased range of motion in her right knee with tenderness, but full strength in her lower extremities. (R. at 128, 402). In November, 2013, Dr. Thompson diagnosed moderate arthritis, finding that plaintiff had full range of motion in her knees with no discomfort and normal MRI results. (R. at 384-86). He (R. at 385-386). In December 2013, Dr. Bakdalieh found that plaintiff had "[g]ood range of motion," and muscle strength of 5/5 in her lower extremities. (R. at 387.) The ALJ observed that plaintiff had several cortisone injections to her right knee which were reportedly effective for several months in treating her pain. (R. 128, 572).

The ALJ also acknowledged that plaintiff suffers from right shoulder bursitis, but concluded that the objective medical evidence did not completely support her subjective allegations. (R. at 128). Upon examination in July of 2015, plaintiff had moderate tenderness and limited range of motion in her right

shoulder, but did not have any obvious instability, had normal muscle tone, and had a normal x-ray. (R. at 128, 575). An October, 2015, MRI showed no acute osseous abnormality and only mild degenerative change of the acromioclavicular joint with inferior spurring and mild positive rotator cuff tendinopathy without a tear. (R. at 128, 578, 580). On examination in October 7, 2015, plaintiff rated her shoulder pain as one in ten. (R. 128, 580).

The ALJ further concluded that plaintiff's subjective complaints were not entirely credible. At the time of the ALJ's decision, SSR 96-7p, 1996 WL 374186 (Soc. Sec. Admin. July 2, 1996) directed the ALJ to assess the credibility of plaintiff's statements concerning her symptoms. That ruling was later superseded by SSR 16-3p, 2016 WL 1119029, at *7 (Soc. Sec. Admin. Mar. 16, 2016), which directs the ALJ to look at whether the claimant's statements about the intensity, persistence and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. The ALJ's analysis in this case passes muster under either ruling, as both rulings permit the ALJ to consider evidence showing that the claimant is not following the prescribed treatment in weighing the claimant's claims of allegedly disabling symptoms. *See* SSR 96-7p, 1996 WL 374186 at *7; SSR 16-3p, 2016 WL 1119029 at *8. The ALJ observed that most of the treatment for plaintiff's physical impairments has been conservative. He noted that plaintiff completed only twelve out of twenty-four physical

therapy sessions, and did not use her TENS unit daily. (R. at 129).

The ALJ's findings are supported by the evaluations of the state agency physicians, who found even fewer limitations regarding plaintiff's physical capabilities than those the ALJ incorporated into the RFC. (R. at 245-46; 259-60). The record before the ALJ includes no expert opinion that plaintiff is unable to walk or stand for the periods of time required for light work.

In addition, although the RFC limits plaintiff to "light work," the ALJ cited 20 C.F.R. §404.1567(a), which is actually the section defining "sedentary work." Because the RFC incorporates several additional physical limitations, it can be viewed as describing a level of work somewhere between light and sedentary work. For example, the RFC restricts plaintiff to lifting and carrying 10 pounds occasionally and 5 pounds frequently, which is less than the 20-pound and 10-pound lift and carry limits applicable to light work, and slightly more than the "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" applicable to sedentary work. *See* §404.1567(a) and (b). The RFC restricts plaintiff to no more that six hours of standing, walking or sitting and requires that she be permitted to be off task five percent of the workday. The RFC further mandates only occasional foot control operation, pushing and pulling only at the specified weight limits, no climbing ladders,

ropes or scaffolds, never kneeling to the right (to accommodate her right knee problems), and never reaching overhead with the right upper extremity (to accommodate her right shoulder problems). The ALJ posed these limitations to the vocational expert and relied on his testimony that a person with the limitations included in the RFC could perform jobs in the national economy.

The court finds that the ALJ sufficiently addressed plaintiff's impairments with respect to her limitations of standing and walking, and that substantial evidence supports the ALJ's finding that plaintiff can perform work at the light exertional level, as further restricted in the RFC. Plaintiff's first statement of error is without merit.

### 3. Fibromyalgia

In her second statement of error, plaintiff argues that the ALJ failed to account for her fibromyalgia-related limitations in making his RFC determination. (Doc. 10 at 18-19). Plaintiff's alleged fibromyalgia limitations stem from her pain symptoms, including back, leg and shoulder pain. The ALJ's decision indicates that he adequately considered plaintiff's fibromyalgia in crafting the RFC. The ALJ clearly recognized that plaintiff suffers from fibromyalgia, as he found fibromyalgia to be one of plaintiff's severe impairments. (R. at 123).

The medical records before the ALJ contain few references to fibromyalgia. Some records simply include fibromyalgia in plaintiff's diagnostic history. (R. at 426, 529, 592, 595,

598,600, and 603).  The most detailed records are the September 13, 2012, treatment notes of Nurse Potts, which document plaintiff's complaints of pain and indicate a diagnosis of fibromyalgia and a referral for physical therapy, and the October 29, 2013, treatment notes of Nurse Potts stating that plaintiff had all positive trigger points and vertebral point tenderness, and that plaintiff would be referred for a pain program.  (R. at 398-99, 428).  The fact that the ALJ did not specifically refer to these records does not mean that he did not consider them. *Thacker*, 99 F.App'x 661 at 665.

In formulating the RFC, the ALJ adequately considered and addressed the impact of plaintiff's pain on her ability to work. The ALJ specifically acknowledged that "the claimant's back pain is complicated by her fibromyalgia and obesity."  (R. at 127). Citing plaintiff's hearing testimony, the ALJ stated that her "alleged difficulties with activities of daily living seemed to be due to her physical impairments and pain[.]"  (R. at 125). The ALJ referred to plaintiff's reports of pain or lack thereof in plaintiff's testimony and medical records, including: plaintiff's hearing testimony concerning her back, leg and shoulder pain; back treatment notes reporting lumbar spine tenderness; Dr. Shannon's post-surgery report that plaintiff's pain was improving and she was having no leg pain; plaintiff's complaints of pain in her right knee, which was improved with cortisone injections; and an October 7, 2015, report in which she rated her shoulder pain as one out of ten.  (R. at 127-28).  As

indicated above, the ALJ accommodated plaintiff's back, knee and shoulder pain by incorporating time limits for walking, standing, and sitting, weight limits and overhead reaching limits in the RFC.

The ALJ's assessment of plaintiff's work capabilities is supported by the opinions of the state agency physicians, who also considered plaintiff's fibromyalgia, yet concluded that plaintiff was not disabled. (R. 237-248; 251-262). The record before the ALJ did not include any expert opinion that plaintiff's physical ability to work was limited or precluded by her pain or by any other fibromyalgia symptoms.[1]

The court finds that the ALJ properly considered plaintiff's fibromyalgia in formulating plaintiff's RFC, and that substantial evidence supports the ALJ's RFC determination. Plaintiff's second statement of error is without merit.

B. Additional Evidence Submitted to Appeals Counsel

Plaintiff submitted certain evidence to the Appeals Council that was not before the ALJ when he rendered his January 19, 2016, decision. *See* 20 C.F.R. §§404.970(b), 416.1470(b)(claimant can submit new and material evidence to the Appeals Council). This evidence includes the November 12, 2015, notes of plaintiff's surgical consultation with Samuel A. Finck, D.O., who recommended shoulder surgery, for a surgical consultation; the

---

[1] Insofar as plaintiff's severe impairments of anxiety and depression may be viewed as symptoms of fibromyalgia, the court notes that plaintiff raised no objections to the ALJ's analysis of the mental health evaluations and opinions of record or to his accommodation of those conditions in the RFC.

December 8, 2015, physical medical source statement of Dr. Dunmyer, expressing the opinion that plaintiff was likely to miss more than four days of work per month and was incapable of even low stress work, and a similar physical medical source statement from Dr. Shannon dated March 21, 2016. (R. at 763-764; 788-791; 793-796).

The Appeals Council made plaintiff's additional exhibits a part of the record and considered that evidence, along with the rest of the record, in deciding whether the ALJ's action, findings or conclusions were contrary to the weight of the evidence. *See* §§404.970(b), 416.1470(b). The Appeals Council concluded that the record did not provide a basis for changing the ALJ's decision, and declined plaintiff's request for review. (R. at 1-6).

Plaintiff argues that if the new evidence is considered, the ALJ's decision is unsupported by substantial evidence and requires remand. (Doc. 10 at 11-14.) Plaintiff also argues that the Appeals Council erred by giving an inadequate explanation of its decision to adopt the ALJ's decision. (Doc. 10 at 13-14.) However, because the Appeals Council denied review, the ALJ's decision became the Secretary's final decision. 20 C.F.R. §§404.981, 416.1481. It is the ALJ's decision, and the facts which were before the ALJ, that are subject to judicial review, not the decision of the Appeals Council. 42 U.S.C. §405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). This court does not have jurisdiction to review the decision of the

Appeals Council. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 174 (6th Cir.1994).

Plaintiff also argues that the new evidence warrants a remand under sentence six of 42 U.S.C. §405(g). A court may remand a case to the Commissioner for consideration of additional evidence only if the party seeking remand demonstrates that 1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing and 2) the evidence is new and material. 42 U.S.C. §405(g); *Melkonyan*, 501 U.S. 89, 98 (1991); *Willis v. Sec'y of H.H.S.*, 727 F.2d 551, 553-54 (6th Cir.1984).

To show good cause, the moving party must present a valid justification for the failure to have acquired and presented the new evidence in the prior administrative proceeding. *Oliver v. Sec'y of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986); *Willis*, 727 F.2d at 554. "Evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2006) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).

To be "material" within the meaning of §405(g), the new evidence 1) must be relevant and probative to plaintiff's condition prior to the Commissioner's decision and 2) must establish a reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered. *Sizemore v. Sec'y of H.H.S.*, 865 F.2d 709, 711 (6th

Cir. 1988); *Oliver*, 804 F.2d at 966. Further evidence on an issue already fully considered by the Commissioner is cumulative, and is not sufficient to warrant remand. *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir.1980). Evidence that plaintiff's condition has deteriorated since the Commissioner's decision is not material. *Sizemore*, 865 F.2d at 712; *Oliver*, 804 F.2d at 966. If plaintiff has experienced serious deterioration since the Commissioner's decision, the appropriate remedy is to file a new application. *Sizemore*, 865 F.2d at 712.

Dr. Dunmyer's December 8, 2015, physical medical source statement, Dr. Shannon's December 2, 2015, letter, the Orthopaedic Associates of Zanesville treatment notes dated from October 20, 2015 to November 18, 2018, and the November 12, 2015, notes of Dr. Finck all predate the ALJ's decision by more than a month. (R. 739-767, 788-792). They were "in existence" and "available to [plaintiff] at the time of the administrative proceeding." *Hollon*, 447 F.3d 477. Accordingly, they are not new evidence, and they do not support a remand under sentence six.

Dr. Shannon's March 21, 2016, physical medical source statement appears at first blush to be new. However, it is not clear to what extent Dr. Shannon's opinion relates to his evaluation of plaintiff's condition during the period before December 31, 2015, plaintiff's last insured date, or to her condition after that date. Insofar as the source statement may relate to plaintiff's condition prior to December 31, 2015,

plaintiff has not shown good cause why she was unable to provide Dr. Shannon's opinion evidence before the ALJ issued his decision. Plaintiff provided Dr. Shannon's late-November post-surgery notes. (R. at 708-710.) At the December 9, 2015, administrative hearing, plaintiff, only weeks after surgery and represented by counsel, did not ask the ALJ keep the record open to provide additional evidence from Dr. Shannon. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) ("[P]laintiff's counsel did not seek to have the record remain open to submit the evidence here provided, which in and of itself shows a lack of good cause.").

In his December 2, 2015, letter to Dr. Dunmyer, Dr. Shannon stated that plaintiff would be scheduled for a follow-up appointment in four to six weeks. (R. at 792). Thus, it appears that his next opportunity to evaluate plaintiff was not until after December 31, 2015. Insofar as Dr. Shannon's source statement is based on information obtained after December 31, 2015, that evidence is necessarily based on plaintiff's condition after the time period covered by the ALJ's decision, which ended on December 31, 2015. Any medical opinion statement showing a material change in plaintiff's impairments or limitations after that date would be evidence of a deterioration of plaintiff's condition since the ALJ's decision. Evidence of deterioration is not sufficient to warrant remand and is properly addressed by the filing of a new application for disability benefits. *Sizemore*, 865 F.2d at 712; *Oliver*, 804 F.2d at 966.

For the reasons explained above, the court finds that plaintiff's additional evidence does not support remand under sentence six, and plaintiff's third statement of error is denied.

IV. Conclusion

Following a review of the record as a whole, the court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, plaintiff's statements of error are overruled, and the decision of the Commissioner is affirmed. The clerk is directed to enter final judgment in this case.

IT IS SO ORDERED.


Date: March 12, 2018          _____s/James L. Graham_____
                              James L. Graham
                              United States District Judge